**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

David Kahler,

                Plaintiff,

                              Civ. No. 05-1107 (RHK/JSM)
                              **MEMORANDUM OPINION AND**
                              **ORDER**

v.

Mary E. Peters, Secretary, Department
of Transportation,[1]

                Defendant.

---

Brenda Lewison, Law Office of Arthur Heitzer, Milwaukee, Wisconsin, Sarah A. Reindl, Collins, Buckley, Sauntry & Haugh, P.L.L.P., St. Paul, Minnesota, for Plaintiff.

Patricia R. Cangemi, United States Attorney's Office, Minneapolis, Minnesota, for Defendant.

---

**INTRODUCTION**

In this action, Plaintiff David Kahler alleges that he was discriminated against on account of his age when he was not re-hired by the Federal Aviation Administration (the "FAA") for several air-traffic-controller positions in Minnesota.[2] Currently pending before

---

[1] At the time this lawsuit was filed, Norman Mineta was the Secretary of the Department of Transportation; Peters assumed that role on September 30, 2006. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Peters has been substituted as a party for Mineta.

[2] Although Kahler has sued the Secretary of the Department of Transportation (the "DOT"), the actions that he challenges were taken by the FAA, which is part of the DOT. For ease of reference, the Court refers to the Defendant herein as the FAA.

the Court is the FAA's Motion for Summary Judgment. For the reasons set forth below, the Court will deny the Motion.

## BACKGROUND

The factual and procedural background in this matter is complicated and, as set forth below, comes largely from the exhibits submitted with the parties' Motion papers.

Kahler, who was born on October 17, 1945, worked for the FAA as an air-traffic controller from 1968 through 1981. (ROI Ex. F2C.)[3] Kahler belonged to an air-traffic-controllers union, namely, the Professional Air Traffic Controllers Organization ("PATCO"). (ROI at 4.)

In 1981, then-President Reagan fired all FAA-employed PATCOs, including Kahler, for participating in an illegal strike against the United States government, and he barred the fired PATCOs from obtaining federal employment for a period of three years. (Id. at 2.) President Reagan later relaxed the bar, agreeing to permit fired PATCOs to obtain federal employment after three years had passed, but not with the FAA. (Id.) After working in the private sector for a few years following his termination, Kahler was hired in 1985 by the United States Postal Service, for which he still works today. (Kahler Dep. Tr. at 6.)

On August 12, 1993, then-President Clinton lifted the ban on ex-PATCOs working for the FAA as air-traffic controllers.[4] (ROI at 2.) Accordingly, on September 1, 1993, the

---

[3] "ROI" refers to the DOT's Report of Investigation, which was prepared in response to Kahler's discrimination complaint.

[4] Air-traffic controllers are known as "Air Traffic Control Specialists" or "ATCSs."

FAA issued a recruitment notice for ex-PATCOs. The notice contained a form for ex-PATCOs to fill out in order to reapply for ATCS positions; they were required to list, among other things, their geographic preferences for such positions. Because the FAA anticipated receiving a significant number of re-employment applications, it compiled a central register of eligible ex-PATCOs from the applications it received. (Hear. Tr. at 217.)[5] Kahler submitted an application for re-employment on October 13, 1993; he was deemed eligible for re-hire into a "terminal" ATCS position and his application was added to the central register. (ROI at 4 & Ex. F/A.)[6] Kahler expressed a preference for terminal positions in Minnesota, Wisconsin, and Massachusetts.[7]

From August 1993, when President Clinton lifted the ban on re-hiring ex-PATCOs, through April 1997, there were no "outside" hires – that is, persons not then-employed by the FAA – into ATCS positions in Minnesota terminals. (Id. at 5.) From April 1997 to April 2002, the FAA made nine "outside" hires into ATCS terminal positions in Minnesota.

---

[5] "Hear. Tr." refers to the transcript of Kahler's hearing before an Equal Employment Opportunity Commission ("EEOC") administrative-law judge.

[6] "Terminal" ATCS positions are air-traffic controller positions in airport towers or in radar facilities within approximately 30 miles of those towers. (Hear. Tr. at 252-54.) There are several other types of facilities in which ATCSs work, but none are at issue here.

[7] Kahler apparently intended to express a preference for Minnesota, Wisconsin, and Maine, but mis-abbreviated Maine as "MA" rather than "ME" in his application. (ROI Exs. F/A & F2A.) Accordingly, Kahler does not pursue in the instant action any claims regarding hiring in Maine or in Massachusetts. (Pl. Mem. at 3-4 & n.3.) Nor does he pursue any claims regarding hiring in Wisconsin, because the only ATCS hiring there during the relevant timeframe resulted from the settlement of discrimination complaints against the FAA. (See id. at 8.)

All of the persons hired were younger than Kahler; they ranged in age from 23 to 36. (Id.) None was an ex-PATCO. (Id.)

In the summer of 2000, Kahler learned that several ex-PATCOs had complained of age discrimination regarding the FAA's ATCS hiring in Minnesota. (Id. at 4.) Upon learning that a postal service co-worker had been re-hired as an ATCS after bringing such a complaint, Kahler attempted to obtain from the FAA information concerning ATCS hiring in Minnesota, Wisconsin, and Maine after 1993. (Id.) In response to a Freedom of Information Act request, in November 2001 the FAA provided Kahler with information indicating that ATCSs had indeed been hired into terminal positions in Minnesota after 1993. (Id.) The FAA, however, refused to disclose the ages of the persons hired. (Id.) According to Kahler, "[t]hat refusal, combined with the fact that three EEOC administrative judges ha[d] ruled that age discrimination took place during the selection of former PATCO members for rehire at the Minneapolis [Air Route Traffic Control Center, gave him] reason to suspect that discrimination based on age also took place in the hiring of [ATCSs] at the terminal[s] in Minnesota . . . ." (Id. at 4-5.) Accordingly, on December 7, 2001, Kahler contacted an FAA equal-employment opportunity counselor and filed an informal complaint of age discrimination. (ROI Ex. B.)[8]  He filed a formal age-discrimination

---

[8] A federal employee must exhaust administrative remedies before commencing a discrimination action in federal court. Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005). The employee must first "consult" with an agency equal-employment opportunity counselor "in order to try to informally resolve the matter." 29 C.F.R. § 1614.105(a). If informal resolution fails, the employee may file a written complaint with the agency. Upon receiving such a complaint, the agency must conduct an investigation, and the employee is entitled to a hearing before an EEOC administrative-law judge if he

complaint with the FAA on December 17, 2001, and later requested a hearing before an administrative-law judge. (Id. Ex. A.)

An ALJ held a hearing on Kahler's complaint on April 8 and 9, 2003. At that hearing, Kahler called as a witness Joyce Brand, the Operations Program Specialist for the FAA's Great Lakes Region Air Traffic Division. (ALJ Decision at 10; Hear. Tr. at 12.) In that position, Brand is responsible for coordinating all outside ATCS hiring in the Great Lakes Region, which includes Minnesota. (Id.)

Brand explained in her testimony that there are several lists (or "sources") she uses for outside hires into ATCS positions, only one of which is made up of ex-PATCOs. (Id. at 15-25.) In filling an ATCS terminal position, Brand consults with personnel at the terminal and decides which source list the candidate will come from. (Id. at 40.) Brand testified that the choice of which list she uses for any particular vacancy, however, is entirely within her (and the FAA's) discretion. (Hear. Tr. at 64-67, 157-64; see also ALJ Decision at 11.)[9] For each of the nine persons hired into an ATCS terminal position in Minnesota from April 1997 to April 2002, Brand stated that she simply decided to use a source list other than the ex-PATCO list, because she was attempting to "juggle" the different hiring sources. (Hear.

---

so requests. The ALJ then makes a final determination on the complaint, which may be appealed to the EEOC's Office of Federal Operations ("OFO"). Lastly, the OFO issues a final decision on the appeal, after which a still-aggrieved employee may commence an action in federal court. See generally 29 C.F.R. § 1614.

[9] Brand testified that her supervisor, who has to approve her annual hiring plans, has never changed her proposals as to the source lists from which she makes outside ATCS hires. (Hear. Tr. at 64-65.)

Tr. at 35-37; Brand Dep. Tr. at 197-202; ALJ Decision at 12-13.) Brand offered no further explanation for her decisions.

At the conclusion of the hearing, the ALJ ruled that although Kahler had established a prima facie case of age discrimination, he had failed to show that the FAA's proffered reason for failing to re-hire him – Brand's use of source lists other than the ex-PATCO list – was a pretext for discrimination. (ALJ Decision at 14-17.) Kahler appealed the ALJ's decision to the OFO, but his appeal was denied, as was his subsequent motion for reconsideration. This action followed; the FAA now moves for summary judgment.

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. Celotex, 477 U.S. at 322; Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Graves v. Ark. Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine

issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

## ANALYSIS

### I. The timeliness of Kahler's claim

The FAA first argues that Kahler's claim must be dismissed, either in whole or in part, because his administrative complaint was untimely; the precise contours of the FAA's argument are unclear, however.[10] The FAA appears to argue that Kahler had a "reasonable suspicion" of age discrimination in the summer of 2000 but waited until December 2001 to bring his discrimination complaint, and that this delay mandates the dismissal of Kahler's claim. (See Def. Mem. at 14-20.) In support of its argument, the FAA directs the Court's attention to 29 C.F.R. § 1614.105. That Regulation states, in pertinent part, that a federal-agency employee who believes that he has been discriminated against "must initiate contact with [the agency's equal employment-opportunity] Counselor within 45 days of the date of the matter alleged to be discriminatory . . . . The agency is required to dismiss any complaint that does not comply with th[is] time limit[]."

The FAA's argument is unpersuasive, for several reasons. First, it raised the argument before the ALJ, who rejected it on two separate occasions. (See 10/30/02 ALJ Order ¶ 1 (denying FAA's motion to dismiss Kahler's claim as untimely); Hear. Tr. at 6

---

[10] In its Motion (Doc. No. 18), the FAA suggests that the Court lacks subject-matter jurisdiction over Kahler's claim because it is untimely. Yet, the FAA nowhere discusses subject-matter jurisdiction in its Memorandum of Law.

(denying FAA's motion for reconsideration of that decision).) The ALJ concluded that the FAA had failed to prove that Kahler was aware of the 45-day time limit and, accordingly, his lack of knowledge triggered an exception to the 45-day limitation. See 29 C.F.R. § 1614.105(a)(2) (requiring 45-day time limit to be extended where no evidence indicates employee was notified of time limit and was not otherwise aware of time limit).[11] The Court perceives no basis to disturb the ALJ's ruling. Indeed, the best the FAA can muster in an attempt to show Kahler's awareness of the 45-day time limit is evidence suggesting that Kahler might have been aware in the summer of 2000 that *discrimination* had occurred. (See Def. Mem. at 13-19.) That evidence, however, in no way suggests that Kahler was aware of the 45-day time limit.[12]

Second, Kahler correctly notes that at least one person – Mark Barger – was hired into an ATCS terminal position in Minnesota in the 45 days immediately preceding his administrative complaint. (See Mem. in Opp'n at 39-40; see also ROI at 5.) At a bare minimum, therefore, 29 C.F.R. § 1614.105 cannot preclude Kahler from challenging his

---

[11] At oral argument, the FAA suggested that the ALJ had held that Kahler's claim was untimely. The FAA is incorrect.

[12] In an oblique attempt to argue that Kahler was aware of the time limit, the FAA points out that the mail facility at which Kahler works has posted an information sheet concerning the filing of discrimination complaints. (See Def. Mem. at 14; Def. Ex. 5.) The information sheet, however, makes no mention of any agency other than the postal service. Indeed, it specifically states that "[f]ederal law requires the *Postal Service* to afford equal employment opportunity to employees" (Def. Ex. 5 (emphasis added)), and only then proceeds to discuss the 45-day time limit. It cites no federal laws and contains no other indicia that the 45-day time limit applies to all government employees. Accordingly, the information sheet is insufficient to demonstrate that Kahler was (or should have been) aware that the 45-day time limit discussed therein applies to *all* government agencies, including the FAA.

failure to obtain Barger's position. And because Kahler's complaint is timely as to the failure to obtain that position, so, too, is his complaint as to his failure to obtain *all* ATCS terminal positions dating back to 1997, because Kahler's Amended Complaint appears to allege that the FAA is engaged in ongoing and systemic discriminatory hiring for ATCSs in Minnesota. Under similar facts in a lawsuit brought by another ex-PATCO, the Eighth Circuit recently held that all of the FAA's ATCS hiring decisions since 1993 could be challenged, even if certain of those decisions occurred more than 45 days prior to the ex-PATCO's discrimination complaint, because the decisions could be considered part of the same ongoing and systemic employment practice. See Coons v. Mineta, 410 F.3d 1036, 1042 (8th Cir. 2005); see also Coons v. Mineta, Civil No. 03-5766, 2006 WL 3146635, at *7-8 (D. Minn. Nov. 2, 2006) (on remand, denying FAA's motion for summary judgment on timeliness issue because the plaintiff's complaint "[e]ssentially . . . asserts that the [FAA] has implemented an over-arching policy of discrimination that has led to discrete discriminatory acts"); Torres v. Mineta, No. Civ. A. 04-0015, 2005 WL 1139303, at *4-5 (D.D.C. May 13, 2005).[13]

---

[13] The FAA argues that consecutive failures to hire must be "looked at as separate and discrete" acts, each with its own 45-day time limit, pursuant to National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002). (Def. Mem. at 19-20.) The Morgan Court, however, expressly declined to "consider the timely filing question with respect to 'pattern-or-practice' claims." 536 U.S. at 115 n.9. Here, Kahler's complaint appears to allege an ongoing "practice" of discrimination by the FAA. Indeed, Kahler alleges that the FAA has engaged in discrimination "from 1993 to the present" (Am. Compl. ¶ 411), an allegation that the Eighth Circuit held in Coons was sufficient to state a claim of "ongoing" and "systemic" discrimination. 410 F.3d at 1042. Morgan, therefore, is inapposite.

Third, the express language of 29 C.F.R. § 1614.105 requires *the agency* to dismiss untimely discrimination claims. Id. ("*The agency* is required to dismiss any complaint that does not comply with the [45-day] time limit[].") (emphasis added). The FAA has cited no authority suggesting that the Regulation also applies to a federal district court analyzing a discrimination complaint after the administrative-review process has run its course. Moreover, the FAA reviewed its ATCS terminal hiring decisions in Minnesota back to 1997 when it conducted its investigation into Kahler's complaint. (See ROI at 5.) Accordingly, the FAA has implicitly conceded that Kahler's complaint is timely as to ATCS terminal hiring decisions in Minnesota made more than 45 days prior to Kahler's complaint; otherwise, the FAA would have been required to dismiss Kahler's complaint in accordance with the express language of the Regulation.

For these reasons, the Court concludes that Kahler's complaint is timely with respect to all of the FAA's hiring decisions for ATCS terminal positions in Minnesota from 1997 forward.

## II.     The merits of Kahler's claim

The Age Discrimination in Employment Act forbids an employer from taking adverse employment actions against an employee because of his age. 29 U.S.C. § 623(a)(1). To establish a claim of intentional age discrimination, a plaintiff may present direct evidence of such discrimination or may prove his claim through circumstantial evidence. See Mayer v. Nextel West Corp., 318 F.3d 803, 806 (8th Cir. 2003). Here, neither party has argued that this is a "direct-evidence" case. Accordingly, the Court must

apply the familiar tripartite burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800-04 (1973).

Under McDonnell Douglas, a plaintiff must first establish a prima facie case of discrimination. To do so here, Kahler must show that (1) he was a member of a protected class (in this case, over the age of forty), (2) he was not hired for the positions he sought, (3) he was qualified for those positions, and (4) persons substantially younger than him were hired instead. See Chambers v. Metro. Prop. & Cas. Ins. Co., 351 F.3d 848, 856 (8th Cir. 2003).

If Kahler establishes a prima facie case, the FAA must "articulate a legitimate non-discriminatory reason" for the failure to hire. Hannoon v. Fawn Eng'g Corp., 324 F.3d 1041, 1046 (8th Cir. 2003). If the FAA fulfills this second step, then Kahler must establish that the FAA's proffered reason is a mere pretext for discrimination. Id. Throughout this burden-shifting framework, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000) (citation omitted).

### A. The prima facie case

The FAA appears to concede that Kahler has established a prima facie case of age discrimination. (See Def. Mem. at 21.)[14] The Court agrees. Kahler was qualified for the

---

[14] The FAA has taken contradictory positions on this issue. In its opening brief, the FAA stated that Kahler "has arguably met the threshold standards for a prima facie discrimination case based on

ATCS terminal positions in Minnesota for which he was not hired, he was over 40 when he did not obtain those positions, and the FAA hired persons substantially younger than him for each position. (See also ALJ Decision at 12 (finding that Kahler had stated a prima facie case of age discrimination).)

### B.     Legitimate, non-discriminatory reason

The FAA argues that it had a legitimate, non-discriminatory reason for each failure to hire challenged by Kahler: Brand opted to use a source list other than the ex-PATCO list when she made the hiring decisions. (See Hear. Tr. at 35-37; Brand Dep. Tr. at 197-201; see also Def. Mem. at 33-39.) Kahler argues that this cannot be a legitimate, non-discriminatory reason because Brand has failed to explain *why* she opted to use the other source lists. (See Mem. in Opp'n at 13-20, 24-26.) In other words, Kahler argues that the FAA's proffered explanation lacks sufficient specificity to constitute a legitimate, non-discriminatory reason under McDonnell Douglas. (Id. at 16 (asserting that the FAA's "generalizations will not do" and quoting Patrick v. Ridge, 394 F.3d 311, 317 (5th Cir. 2004) for the proposition that the employer's proffered reason must be articulated with

---

age." (Def. Mem. at 21.) In its Reply Brief, however, the FAA argued that Kahler had failed to establish one of the necessary elements of his prima facie case, namely, that he suffered an adverse employment action. (See Reply Mem. at 9 (asserting that "[n]o adverse employment decision was made regarding [Kahler]," because he "was not an applicant for a specific position" and therefore he "was not rejected for any particular position").) Finally, at oral argument, the FAA (again) conceded that Kahler had stated a prima facie case of age discrimination.

"sufficient clarity to afford the employee a realistic opportunity to show that the reason is pretextual").) Although this argument has some superficial appeal, ultimately it fails.[15]

The Court does not agree that the FAA's proffered reason for its hiring decisions amounts to a "mere generalization." Indeed, the proffered reason – the use of other source lists – is neither "content-less [nor] non-specific," cf. Patrick, 394 F.3d at 317 (employer's proffered explanation that applicant was not "sufficiently suited" to position was insufficient to satisfy employer's burden under second step of McDonnell Douglas); it just happens to be unsatisfactory to Kahler. Moreover, Kahler can challenge the FAA's proffered reason as pretextual by arguing that the ex-PATCO list was composed of older applicants and, accordingly, the FAA's refusal to use that list necessarily amounted to discrimination. Indeed, Kahler makes that very argument later in his Opposition Brief. (See Mem. in Opp'n at 37 (asserting that "[t]he FAA/DOT's segregation of ex-PATCOs to a separate hiring list is *per se* discrimination").) Because the FAA's proffered reason is sufficiently specific to afford Kahler "a realistic opportunity to show that the reason is

---

[15] Because the FAA contends that only Barger's hiring was timely challenged by Kahler (see supra at 7-10), it devotes a significant portion of its Motion papers to comparing Barger's qualifications to Kahler's. (See Def. Mem. at 22-25; Reply Mem. at 9-13.) And, it relies on that comparison to argue that it had a legitimate, non-discriminatory reason for selecting Barger over Kahler: "if [Kahler] had been compared to Barger, he was not better qualified than him. Kahler would not have been the selectee." (Def. Mem. at 22.) What matters, however, is the employer's motivation – in other words, what was in the employer's "mind" *at the time it made the challenged employment decision*? The FAA's hypothetical comparison of Barger's qualifications to Kahler's – which was not made at the time of the challenged failures to hire *ipso facto* – therefore cannot be a legitimate, non-discriminatory reason under the second step of McDonnell Douglas. See McKennon v. Nashville Banner Publ'g Co., 513 U.S. 352, 360 (1995) ("The employer could not have been motivated by knowledge it did not have and it cannot now claim that the employee was fired for th[at] nondiscriminatory reason.").

pretextual," Patrick, 394 F.3d at 317, it satisfies the FAA's burden under the second step of McDonnell Douglas.  See Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255-56 (1981) (purpose of the second step of McDonnell Douglas paradigm is "to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext"); Johnson v. Women's Christian Alliance, 76 F. Supp. 2d 582, 586 (E.D. Pa. 1999) (burden on employer at second step of McDonnell Douglas is to proffer reason that plaintiff can attempt to "pierce . . . with facts of record").[16]

### C.   Pretext

Because the FAA has proffered a legitimate, non-discriminatory reason for each of the challenged failures to hire, Kahler can avoid summary judgment only if the evidence (1) creates a fact issue as to whether the FAA's proffered reason is pretextual and (2) creates a reasonable inference that age was a determinative factor in the FAA's hiring decisions. Haas v. Kelly Servs., Inc., 409 F.3d 1030, 1035 (8th Cir. 2005).  In other words, Kahler must present sufficient evidence to create a genuine issue of material fact on the ultimate question of "discrimination *vel non*."  Id. at 1035-36.  Although many employment-discrimination cases founder at this third and final step of the McDonnell Douglas framework, that is not the case here.  Rather, Kahler has identified several "weaknesses,

---

[16] In the Court's view, the reason *why* Brand opted to use source lists other than the ex-PATCO list is not relevant to the FAA's burden of producing a legitimate, non-discriminatory reason. Rather, the Court believes that Brand's reason for using other source lists implicates only the third stage of the McDonnell Douglas analysis, that is, whether the FAA's proffered reason is pretextual.  See Burdine, 450 U.S. at 256 (noting that "the sufficiency of the defendant's evidence should be evaluated by the extent to which" it rebuts the presumption of discrimination created by the prima facie case).

implausibilities, inconsistencies, incoherencies, or contradictions in the [FAA's] proffered legitimate reason[] for its action that a reasonable factfinder could rationally find [it] unworthy of credence." EEOC v. BCI Coca-Cola Bottling Co. of L.A., 450 F.3d 476, 490 (10th Cir. 2006); accord Kautz v. Met-Pro Corp., 412 F.3d 463, 467 (3rd Cir. 2005).

First, Kahler points to the weakness of the FAA's proffered reason for its hiring decisions: Brand's use of source lists other than the ex-PATCO list. In isolation, one or two failures to hire from the ex-PATCO list would not, in the Court's view, permit any inference of discrimination. But the fact that Brand refused to use the ex-PATCO list for *nine* hires over *five* years could lead a reasonable juror to infer that the FAA's proffered reason is pretextual. This is especially true given Brand's failure to provide any meaningful explanation – despite ample opportunity – as to why she chose to use those other lists, coupled with the backdrop of other evidence of age bias discussed below.[17]

Second, but perhaps more importantly, Kahler points to evidence – both from this case and from previously litigated cases involving the FAA's hiring of ex-PATCOs – suggesting that Brand and others at the FAA were biased on account of age.[18] In one such

---

[17] The FAA appears to argue that Brand was not a decision-maker but rather was a "mere functionary." (Def. Mem. at 33.) This is a distinction without a difference, however, because there is no dispute that Brand was part of the decision-making process. See United States ex rel. Golden v. Ark. Game & Fish Comm'n, 333 F.3d 867, 871 (8th Cir. 2003) (noting that plaintiff can prove pretext by presenting "evidence of conduct or statements *by persons involved in the employer's decision-making process* reflective of a discriminatory attitude") (emphasis added).

[18] Evidence of age discrimination towards other employees is admissible and may be considered at the summary-judgment stage. See Phillip v. ANR Freight Sys., 945 F.2d 1054, 1056 (8th Cir. 1991); Estes v. Dick Smith Ford, Inc., 856 F.2d 1097, 1104 (8th Cir. 1988), overruled on other grounds, Foster v. Univ. of Ark., 938 F.2d 111 (8th Cir. 1991).

case, Adsit v. Slater, EEOC Dec. 260-A0-9050x (July 18, 2000), the EEOC denied the FAA's motion for summary judgment on an age-discrimination complaint brought by an ex-PATCO, largely as a result of its conclusion that Brand was age-biased. Id. at 15 ("The Complainants have clearly established that Brand held discriminatory animus.").[19] Brand was questioned about the Adsit case during the administrative hearing in the case *sub judice*, and she admitted that she had instructed a subordinate that he could consider an ex-PATCO's potential employment longevity when deciding who to hire for an ATCS position. (Hear. Tr. at 40-44.) Longevity in this instance was merely a proxy for age, because Brand's comment was motivated by her concern over the ATCS mandatory retirement age of 56. (Id. at 44.) In other words, the age of the ex-PATCOs was the basis for Brand's longevity comment because there was "no way [for her] to take into account mandatory retirement while ignoring age." Varley v. Reno, EEOC Dec. 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x (Dec. 3, 1998), 1998 WL 896805, at *6.[20]

---

[19] Adsit concerned the 1998 hiring of 13 ex-PATCOs into ATCS positions at a non-terminal radar facility in Minnesota. In that case, Brand forwarded a list of 98 ex-PATCOs to a five-member committee, which recommended hiring 13 individuals on the list. Brand then extended offers to those 13 individuals, none of whom was over 55. Garry George, a committee member who worked closely with Brand in connection with the selection process, testified that the hiring committee understood from Brand that it was acceptable to use age as a selection criterion and that it could select an "individual who was 45 over the person who was 55 based on their age." (Pl. Ex. 4 at 73.) Kahler also directs the Court's attention to two other EEOC decisions in which ALJs concluded that the FAA had engaged in age discrimination when hiring ex-PATCOs for non-terminal positions. (See Mem. in Opp'n at 32-36 (citing Anderson v. Mineta, EEOC Appeal No. 01A10979, 2002 WL 1426294 (June 19, 2002), and Opstad v. Slater, EEOC Dec. 240-A0-5002x (Sept. 19, 2000)).)

[20] Facially neutral factors that are merely correlated with age – such as seniority or pension status – may properly be considered by an employer when making hiring or firing decisions. See Hazen Paper Co. v. Biggins, 507 U.S. 604, 611 (1993). Here, however, Brand's statement about longevity

In addition, Kahler points to evidence indicating that Brand offered shifting explanations for the failure to hire another ex-PATCO for an ATCS position in Rochester, Minnesota. (See Mem. in Opp'n at 28.) In that instance, the Rochester Air Traffic Manager, Wallace Welter, had requested that an ex-PATCO named Jeffrey Johnson be hired for the position. Brand told Welter that he could not hire Johnson or anyone else from the ex-PATCO list, ostensibly because the Office of Personnel Management "was putting pressure on the FAA to hire individuals [from] the OPM list." (ROI Ex. F3D.) Yet, Brand later informed her supervisor that the failure to hire Johnson was not caused by pressure to use the OPM list, but rather resulted from Johnson's lack of recent aviation experience. (See ROI Ex. F3C.) The change in Brand's explanation provides further support for Kahler's contention that Brand harbored age bias. See Arnold v. Nursing & Rehab. Ctr. at Good Shepherd, LLC, 471 F.3d 843, 847 (8th Cir. 2006).

Kahler also points to the segregation of ex-PATCOs onto their own source list as evidence of the FAA's discriminatory motive, because all persons on the list are necessarily over 40 years of age. (See Mem. in Opp'n at 38.) Although the FAA has articulated a facially neutral reason for having done so, in light of the evidence discussed

---

was not merely correlated with age. Rather, Brand used age itself as a decision-making factor, because she had to consider an ex-PATCO's age in order to determine his potential longevity, *i.e.*, how long the ex-PATCOs could work for the FAA before being forced into retirement. This she could not do. See EEOC v. City of Independence, Mo., 471 F.3d 891, 896 (8th Cir. 2006) ("The ADEA requires the employer to ignore an employee's age in making employment decisions.") (internal quotation marks and citation omitted).

above, a reasonable juror could conclude that this segregation evidences a discriminatory motive by the FAA.

For all of these reasons, the Court concludes that Kahler has proffered sufficient evidence to create a triable issue as to whether the FAA's proffered reason for its failure to re-hire Kahler is merely a pretext for discrimination. The Court pauses here to note, however, that in reaching this conclusion it is not writing on a *tabula rasa*. Indeed, in a recent case presenting remarkably similar facts to the instant matter, United States District Judge Michael Davis of this Court denied the FAA's motion for summary judgment after concluding that Robert Yanda, another ex-PATCO, had presented sufficient evidence to create a fact question on the issue of pretext. See Yanda v. Mineta, Civ. No. 03-6411, 2006 WL 1373155, at *6-7 (D. Minn. May 15, 2006). In reaching that conclusion in Yanda, Judge Davis relied on much of the same evidence to which Kahler directs the Court's attention here.[21]  See id.

Finally, at oral argument the FAA suggested that the Court should defer to the ALJ's finding that Kahler had failed to prove pretext. Of course, the ALJ's decision is not binding on this Court, where Kahler's claim receives *de novo* review. Kremer v. Chem. Constr. Corp., 456 U.S. 461, 477 (1982) (noting that a "civil action in federal court following an EEOC decision [is] intended to be a trial *de novo*"). But more importantly, the ALJ's decision actually underscores why the FAA's Motion must be denied. In concluding that

---

[21] Noticeably (and tellingly) absent from the FAA's Motion papers is any discussion of Yanda.

18

Kahler had failed to show pretext, the ALJ largely relied on his assessment of Brand's credibility during her testimony at the administrative hearing.  (See ALJ Decision at 12-13, 15-17.)  At the summary-judgment stage, however, the Court cannot make such a credibility determination.  Yates v. Rexton, Inc., 267 F.3d 793, 800 (8th Cir. 2001) ("In determining whether a plaintiff has met [his] burden with respect to pretext in a summary judgment motion, a district court is prohibited from making a credibility judgment.").

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, it is **ORDERED** that Defendant's Motion to Dismiss, Alternatively for Summary Judgment (Doc. No. 18) is **DENIED**.[22]

Dated: February  21 , 2007                          s/Richard H. Kyle
                                                    RICHARD H. KYLE
                                                    United States District Judge

---

[22] In denying the FAA's Motion, the Court in no way expresses an opinion on Kahler's likelihood of success at trial or his ability to survive a motion for judgment as a matter of law after the presentation of his case.